UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| AUBREY E. GREGORY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:21-cv-577-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| LOUISVILLE/JEFFERSON COUNTY | ) | **ORDER** |
| METRO GOVERNMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion to Dismiss Plaintiff Aubrey Gregory's Complaint filed by Defendants Louisville Metro Government, Mayor Greg Fischer, and Chief Erika Shields. [R. 4]. Plaintiff responded to the Motion, [R. 5], and Defendants replied, [R. 6]. This matter is fully briefed. For the reasons set forth herein, the Court will grant the Motion to Dismiss.

I.   **BACKGROUND**

A.  **Procedural Background**

Plaintiff Aubrey Gregory filed this action on August 26, 2021, in Jefferson Circuit Court. [R. 1–3]. In his Complaint, Gregory alleged that while he was employed at the Louisville Metro Police Department (LMPD), he was denied equal protection of the laws and subjected to reverse discrimination when he was demoted from Major to Lieutenant. *Id.* at 4–6. On November 16, 2021, Defendants timely filed their Notice of Removal, requesting the case be removed to the U.S. District Court for the Western District of Kentucky at Louisville. [R. 1]. Upon removal,

Defendants filed a Motion to Dismiss. [R. 4]. Gregory responded, [R. 5], and Defendants replied, [R. 6]. This case is now ripe for review.

### B. The Complaint

Gregory's Complaint alleges the following facts. In February 1999, Gregory became a member of the LMPD. [R. 1–3, p. 2, ¶ 8]. Throughout his career, Gregory received numerous promotions, including in July 2017, when Mayor Greg Fischer appointed Gregory to Major. *Id.* ¶¶ 6, 9. In March 2021, Gregory became the Director of the LMPD Training Academy. *Id.* ¶ 10. On May 19, 2021, Gregory entered the classroom of Metro Academy Class 48 to instruct recruits, who were all present, on "isms," including racism, sexism, implicit bias, cultural diversity, and other related topics. *Id.* at 3, ¶¶ 11–12. Upon entry into the classroom, Gregory found two African American men[1] discussing the use of a racial epithet. *Id.* ¶¶ 13–14. One of the men was from Africa and the other was a retired firefighter. *Id.* ¶ 14.

During their discussion, both men were using the racial epithet. *Id.* ¶ 15. The individual from Africa stated that at the time of his immigration to the United States, he was not warned that the use of the racial epithet was offensive in America. *Id.* ¶ 16. He explained that in his home country, the racial epithet was not offensive, but simply meant black. *Id.* ¶ 17. He then went on to say that he was a [the racial epithet] because he is black. *Id.* The retired firefighter responded by stating that the racial epithet had multiple meanings in America—sometimes it means family or kinship, and sometimes it is offensive. *Id.* ¶ 18. He then turned to the class of recruits and told them that that they had better be prepared because they were going to hear the racial epithet in certain communities in the Metro. *Id.* ¶ 19. In support of his statement, the individual told the recruits that because Gregory (i.e., the Major), had worked in such

---

[1] In the Complaint, Gregory states that the men's identities are known, but omitted from the complaint. [R. 1–3, p. 3 n. 1].

2

communities for years, he could confirm the use of the racial epithet within the communities. *Id.* ¶ 20. At this point, Gregory addressed the recruits, stating, "[Y]es, you are going to hear [the racial epithet] out there. Sometimes it does mean family or like a kinship of shared struggle, and sometimes it is the most derogatory, disgusting word you will hear; but you are going to hear it." *Id.* ¶ 21.

The next day, on May 20, 2021, Gregory was contacted via telephone by Chief Erika Shields, who stated that she had heard that Gregory used a racial epithet during training class. *Id.* at 4, ¶ 22. Gregory acknowledged his use of the racial epithet and explained the context in which it was used. *Id.* ¶ 23. Chief Shields then instructed Gregory to not report to work until she decided what was going to be done about the situation. *Id.* ¶ 24. Gregory talked with various members of the LMPD about the matter, including Deputy Chief Gwinn–Villarreal, who advised Gregory to retire even though no one believed he used the racial epithet in a derogatory manner. *Id.* ¶¶ 25–26. On May 24, 2021, Gregory was interviewed by Louisville Metro Government Human Resource representative Adrian Henderson. *Id.* ¶ 27. Gregory informed Henderson of the facts of the incident in question and Henderson stated that Gregory's account matched what other interviewees had reported. *Id.* ¶ 28. On June 1, 2021, Gregory met with Chief Shields alone. *Id.* ¶ 29. Three days later, on June 4, 2021, Gregory was presented with a letter of demotion, which demoted him from Major to Lieutenant. *Id.* ¶ 30. Gregory retired from the LMPD on August 1, 2021. *Id.* at 2, ¶ 5.

Based on these alleged facts, in Count I, Gregory claims he was denied equal protection of the law in violation of his rights under 42 U.S.C. §§ 1981, 1983, and 1985 pursuant to the Fourteenth Amendment of the United States Constitution; in Count II, he asserts unlawful racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et*

*seq.*; and in Count III, he brings a claim of unlawful racial discrimination in violation of the Kentucky Civil Rights Act (KCRA), KRS 344.010, *et seq*. *Id.* at 5–6. Defendants now seek to dismiss all counts for failure to state a claim. [R. 4]. Defendants also seek to dismiss all claims as against Mayor Greg Fischer, specifically, because Gregory failed to plead with particularity any conduct performed against him by Mayor Greg Fischer. *Id.* at 7–8; [R. 6, p. 3].

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" so long as the complaint's factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 577). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The process of determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to the [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are

drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

## III.   ANALYSIS

### A.  Gregory's Race

Defendants are correct in stating that "nowhere in the Complaint is [Gregory's] race pleaded." [R. 6, p. 2]. Gregory also fails to inform the Court of his race in his Response. *See* [R. 5–1]. However, Gregory has presented claims of reverse discrimination, and therefore, the Court will proceed to analyze the parties' arguments under the assumption that Gregory is Caucasian. *See Boger v. Wayne Cty.*, 950 F.2d 316, 325 (6th Cir. 1991) (defining reverse discrimination as a "claim by a *white* person that the employer discriminated in favor of a member of a racial minority") (emphasis added).

### B.  "Class–of–One" Equal Protection Claim

Defendants argue that Gregory's equal protection claims should be dismissed because he asserts a "class of one" equal protection claim, which is inapplicable in the public employment context. [R. 4–1, p. 4]. In support of their argument, Defendants cite to *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008). In *Engquist*, the plaintiff brought a "class–of–one" equal protection claim, meaning that she alleged "that she was fired not because she was a member of an identified class (unlike her race, sex, and national origin claims), but simply for 'arbitrary, vindictive, and malicious reasons.'" *Id.* at 595 (citation omitted). In light of her claim, the Court was charged with determining "whether a public employee can state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's

membership in any particular class." *Id.* at 594. Ultimately, the Court held that the "class–of–one" theory has "no place in the public employment context." *Id.*

*Engquist*'s holding, however, is not applicable here. "The hallmark of [a 'class–of–one'] claim is …the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010). In Count I of his Complaint, Gregory asserts that he was denied equal protection of the laws when he was demoted from Major to Lieutenant because of his race, as evidenced by the fact that neither of the two African American individuals involved in the May 19, 2021, incident were disciplined for also using the racial epithet. [R. 1–3, p. 5, ¶¶ 32–33]. In other words, unlike the plaintiff in *Engquist*, Gregory's equal protection claim rests on the assertion that he was subjected to different treatment due to his membership in a particular class (i.e., race), not for arbitrary or malicious reasons. *Compare Bartlett v. Washington*, No. 18-11508, 2019 U.S. Dist. LEXIS 29231, at *9 (E.D. Mich. Feb. 25, 2019), *aff'd*, 793 F. App'x 403 (6th Cir. 2019) (where the plaintiff's "class–of–one" equal protection claim was dismissed because it is not recognized in the public employment context). As a result, the Defendants' "class–of–one" argument fails.

## C. Title VII, KCRA, and Equal Protection Claims Under 42 U.S.C. §§ 1981 and 1983

Gregory claims he was treated differently than the two African Americans who used the same racial epithet and that such treatment was on account of his race in violation of the Equal Protection Clause, Title VII and the KCRA. The Court will determine the viability of Gregory's Title VII claim (Count II), KCRA claim (Count III), and 42 U.S.C. §§ 1981 and 1983 equal protection claim together since all three claims allege the same type of race discrimination and are analyzed using the same standards. *See Wright v. Memphis Police Ass'n*, No. 14–2913–STA–dkv, 2015 U.S. Dist. LEXIS 67507, at *15 (W.D. Tenn. May 26, 2015) (citing *Barrett v.*

*Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009)) ("Whether a plaintiff seeks relief for employment discrimination under Title VII or section 1981, the Sixth Circuit analyzes both claims under the same standards."); *Spees v. James Marine, Inc.*, 617 F.3d 380, 389 (6th Cir. 2010) (quoting *Ammerman v. Bd. of Educ. of Nicholas Cty.*, 30 S.W.3d 793, 797–98 (Ky. 2000)) ("And the KCRA is 'similar to Title VII of the 1964 federal Civil Rights Act and should be interpreted consistently with federal law.'"); *Thompson v. City of Lansing*, 410 F. App'x 922, 934 (6th Cir. 2011) ("[C]laims of racial discrimination brought under § 1981 and § 1983 are analyzed under the same standards as Title VII … discrimination claims.").

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The KCRA is virtually identical to Title VII, stating that it is unlawful for an employer to "…discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over …" Ky. Rev. Stat. § 344.040(1)(a). The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

While a plaintiff is not required to establish a prima facie case at the pleading stage, the Court may look to the elements of a given claim to support its finding of plausibility. *See Towns v. Memphis/Shelby Cnty. Health Dep't*, No. 17–cv–02626, 2019 U.S. Dist. LEXIS 25121, at *11 (W.D. Tenn. Jan. 25, 2019), report and recommendation adopted, 2019 U.S. Dist. LEXIS 24253 (W.D. Tenn. Feb. 14, 2019) ("While a Title VII plaintiff need not establish a prima facie case at the motion to dismiss stage, courts have looked to the prima facie requirements when

determining whether a Title VII plaintiff has pleaded an actionable claim."); *see also White v. Adena Heath Sys.*, No. 2:17–cv–593, 2018 U.S. Dist. LEXIS 114975 (S.D. Ohio July 11, 2018) (discussing the prima facie elements in the context of a motion to dismiss several Title VII claims). A prima facie case of race discrimination under Title VII requires a showing that Plaintiff: (1) was a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees outside his protected class. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (citation omitted). However, in cases involving reverse discrimination claims, such as here, the first prong in establishing a prima facie case does not require the plaintiff to show that he or she is a member of a racial minority; instead, it requires the plaintiff to establish "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) (citations omitted). Nonetheless, the Sixth Circuit has cautioned that while the "background circumstances" prong must be satisfied, the Court should not construe it in such a manner as to "impermissibly impose a heightened pleading standard on majority victims of discrimination." *Id.* at 257 (citations omitted).

The Court finds that Gregory has not alleged a plausible claim for reverse discrimination for two reasons. First, Gregory has failed to allege background circumstances to support the suspicion that the Defendants discriminate against the majority. *See id.* Background circumstances can consist of the following: statistical evidence or employment policies showing a history of unlawful consideration of race by the employer; evidence that the person responsible for the employment decision was a minority; or evidence of ongoing racial tension in the workplace. *Id.* at 257; *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003);

*Boger*, 950 F.2d at 324–25. Gregory does not allege, however, any one of the above circumstances in his Complaint. In other words, mindful of the Sixth Circuit's cautionary language, Gregory utterly fails to allege any facts that even hint at Defendants being "that unusual employer who discriminates against the majority." *Zambetti*, 314 F.3d at 255, 257. Instead, the Complaint simply alleges that Gregory was treated differently than the two African American individuals because they were not subject to discipline for using the same racial epithet as he did on May 19, 2021. [R. 1–3, p. 5, ¶ 32]. This assertion is insufficient to demonstrate background circumstances. *See Rose v. Clarksville–Montgomery Cty. Cmty. Action Agency*, No. 3:15–cv–00415, 2015 U.S. Dist. LEXIS 157918, at *26 (M.D. Tenn. Nov. 20, 2015), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 31084 (M.D. Tenn. Mar. 9, 2016) (finding that the plaintiff's claim that she was disciplined when her African American co–workers were not disciplined for the same conduct was insufficient to demonstrate background circumstances); *see also Bartlett v. Washington*, No. 18–11508, 2019 U.S. Dist. LEXIS 29231, at *8–9 (E.D. Mich. Feb. 25, 2019) (where the plaintiff's reverse race and sex discrimination claims under 42 U.S.C. § 1983 were dismissed because the plaintiff failed to allege background circumstances in support of his claims). As in *Rose* and *Bartlett*, Gregory has failed to cite to anything that suggests the Defendants discriminate against the majority.

Second, even if Gregory plausibly alleged background circumstances, he fails to allege facts that illustrate he was treated differently than similarly–situated, minority employees. *See Newman*, 266 F.3d at 406. In the Sixth Circuit, to establish that other employees are similarly situated, a plaintiff must show that they are similarly situated in "all *relevant* respects." *Hobbs v. Lucas Cty. Sheriff's Office*, No. 3:19–CV–02047, 2021 U.S. Dist. LEXIS 88475, at *8 (N.D. Ohio May 6, 2021) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th

Cir. 1998)).[2] Relevant factors include "whether the employees (1) engaged in the same conduct, (2) dealt with the same supervisor, and (3) were subject to the same standards." *Id.* (quoting *Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019)). However, Gregory does not specifically identify any similarly–situated individuals. The only two individuals mentioned in the Complaint are the two African American men also involved in the May 19, 2021, incident. While Gregory alleges he and the two African American individuals engaged in the same conduct (i.e., used the same racial epithet in a LMPD classroom setting), he wholly fails to allege how these individuals are similarly situated in any other relevant respect. The Complaint contains no factual allegations that both Gregory and the African American individuals dealt with the same supervisor, were subject to the same standards, or had similar job responsibilities.

In fact, Gregory does not allege, and it is unclear to the Court, whether the African American individuals are even employees of the LMPD. If Gregory was aware of such details, he simply chose not to include them in his Complaint. *See* [R. 1–3, p. 3 n. 1] ("The identities of these individuals are known, but omitted from this complaint."). Gregory merely alleges both individuals are African American, one individual is from Africa, and the other individual is a retired firefighter. [R. 1–3, ¶ 14]. This information, alone, fails to plausibly satisfy the Sixth Circuit's similarly–situated standard between Gregory and the two African American individuals. As a result, Gregory has failed to properly plead a reverse discrimination claim. Count II, Count III, and the equal protection claims under 42 U.S.C. §§ 1981 and 1983 in Count I are dismissed under Rule 12(b)(6) for failure to state a claim.

---

[2] The Court recognizes that this case deals with judgment on the pleadings under Rule 12(c) rather than a motion to dismiss under Rule 12(b)(6). However, it is applicable here since a motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 465–66 (6th Cir. 2017).

### D.  Equal Protection Claim Under 42 U.S.C. § 1985

To plead a cognizable § 1985 claim, a plaintiff must allege specific facts that, taken together, plausibly suggest that (1) two or more individuals "conspire[d] … for the purpose of depriving [him] of the equal protection of the laws," (2) they acted to further that conspiracy, and (3) he was injured as a result. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009) (quoting *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007)). Moreover, a plaintiff must establish that the conspiracy was "motivated by a class–based animus." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).

Gregory has not adequately pleaded a claim under 42 U.S.C. § 1985. In his Complaint, Gregory fails to allege any facts plausibly supporting the existence of a conspiracy between the Defendants to deprive him of his rights. The Complaint does not even hint at, let alone mention, a conspiracy, or contain any allegations which could be construed in this manner. Further, although Gregory alleges "[n]o disciplinary action was taken against either African American individual who used the same racial epithet [as he did]," [R. 1–3, p. 5, ¶ 32], this conclusory allegation is legally insufficient to allege discriminatory intent or that the African Americans were similarly situated. *See Nali*, 355 F. App'x at 912 (citing *Iqbal*, 556 U.S. at 678) ("[A] complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief."); *see also* discussion *supra* Section III.C. Consequently, Gregory's equal protection claim under 42 U.S.C. § 1985 in Count I is dismissed under Rule 12(b)(6) for failure to state a claim.

### E.  Mayor Greg Fischer

Because the Court has dismissed all counts in Gregory's Complaint, it will not address the Defendants' argument regarding the claims against Mayor Fischer, specifically.

IV.     **CONCLUSION**

For the reasons stated above, the Court will grant the Defendants' Motion to Dismiss [R. 4]. Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The Motion to Dismiss filed by Defendants Louisville Metro Government, Mayor Greg Fischer, and Chief Erika Shields [R. 4] is **GRANTED**.

2. Plaintiff's Complaint is **DISMISSED** and **STRICKEN** from the Court's **ACTIVE DOCKET**.

This the 29th day of December, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY